## CUDJERO *et al. vs.* BARK SEA BREEZE *et al.*

### IN ADMIRALTY.   BEFORE HARRIS, J.

### NOVEMBER, 1874.

Seamen, who shipped at Japan for a whaling voyage, and to San Francisco as port of discharge, claimed to be discharged at Honolulu and to receive wages and passage to San Francisco, the ship being about to proceed to New Bedford.

Held, if the vessel were bound to San Francisco, calling here would not be a deviation; but the Court would interfere to prevent libellants being taken to New Bedford.

It appearing that the whole matter is within the American Consul's jurisdiction, and that the only object of the suit is to avoid payment by the ship of consular fees: Held, that it is no part of the duty of this Court to interfere to prevent the consul from doing his duty, or to assist United States citizens to evade the force of the laws of their own country.

Jurisdiction declined.

### DECISION OF HARRIS, J.

The libel in the above case prays as follows: "That the bark Sea Breeze, and Wicks, the master of the said bark, be decreed to pay to the libellants sufficient money for them to purchase passages to San Francisco, and their support meanwhile, with the costs of this libel, and for such further relief as justice and law may require."

The allegations in the libel are that the libellants shipped in the month of May last at Nagasaki, Japan, for a whaling voyage northward, thence to San Francisco as a port of discharge; and that having completed her cruise in the Ochotsk Sea, the bark proceeded to this port of Honolulu, for the purpose of discharging her cargo and obtaining freight for New Bedford, which the libellants allege is a deviation entitling them to their discharge. And the libellants further state that Wicks, the master of the bark, says, as they are informed, that the libellants must go to New Bedford and settle the matter of complaint there, and refuses to comply with their just claims—meaning thereby, their claim to be discharged and to be paid a reasonable sum to place them in San Francisco, according to the terms of their agreement. And it likewise appears by the libel that the libellants are subjects of the Emperor of Japan. It likewise appears that the bark is an American vessel.

There was no answer put in to the libel, but the captain of the vessel appeared for himself.

It was stated by Mr. Hartwell, counsel for the libellants, that it had been proposed to him that if he would agree to take $100 for them all (ten) that there would be no opposition made on the part of the captain and owners of the vessel.

The captain being interrogated under oath, stated that he had engaged the men at Nagasaki; that he paid them $15 advance there, and that they had taken up some clothing on the voyage; that he had taken about 70 barrels of oil, and about 600 lbs. bone.

The captain likewise says he came here to get a freight for New Bedford, "but if we have to pay $60 each for consular fees, we shall go to San Francisco." The fees meant are those exacted by the United States law from ships sailing under their flag for men discharged in a foreign port. The captain continues to say: "it is more than likely we shall go to New Bedford."

Now, if the ship shall proceed ultimately to San Francisco, whither she can go and arrive within the time ordinarily desig-

nated as a season's cruise, clearly there would be no deviation from her voyage, and it would be a novel thing in this ocean if. it should be held that a whaling vessel which was bound to discharge her men in San Francisco, and which called here with a view to obtain information or for any other cause, her crew was to be discharged by this Court by reason of her deviation. A whaleman on a cruise is bound to no particular point, and cannot be said to be deviating from his voyage by reason of his putting into this port or that port, as long as he is pursuing the legitimate object of his cruise. The captain has not broken up his voyage yet, though it appears he contemplates the possibility of so doing. Truly if the ship was about to proceed to New Bedford and take these men with her, their contract to the contrary notwithstanding, and the United States Consul would not interfere to discharge the men, and thereby prevent so great a wrong—a thing which is in itself insupposable and which certainly is not presented in this case—then the Court would interfere in favor of the subjects of a friendly power.

If the captain is willing to discharge these men here, and they are willing to be discharged, and the captain is willing to pay them $10 each, and they are willing to take it, there is no reason why they should not do so without invoking the aid of this Court.

But it is said at the hearing that the payment of the $60 required by the consul would be no benefit to the men, and involve the ship in great expense if the consul follows literally the United States law, and that this course would be very agreeable to the parties interested, and the commercial community here. No doubt it would! but it would appear from all these remarks that it is not a *bona fide* case between litigants but a mode of avoiding the fees exacted by the United States from her own citizens owning vessels sailing under her flag. Now, passing by the fact that the prayer of the libel does not in form ask for a discharge, and supposing that it did ask for one, it is not for the Court to decide whether it would have the effect to absolve the ship from the consular dues, since the adminis-

tration of their own law is a matter which does not concern us, but lies entirely between the United States Government, its consul and its citizens.

But it is certain that it is no part of the duty of this Court to interfere to prevent the consul from doing his duty, or to assist the United States citizens to evade the force of the laws of their own country.

It was said at the hearing that a proposition had been made to discharge the men if they would pay the $60 required by the United States law.

Now the men, it is alleged, are entitled to their discharge any way, provided the ship sails for any port except San Francisco, and the law which is referred to was passed for the protection of the men, and to prevent their being left destitute on a foreign shore. Consequently the money is to be paid by the ship and not by the men, and I have not a doubt that the United States Consul will see to it, that these men neither go to New Bedford, whither they have not agreed to go, nor have $60 a-piece taken from them against right and justice—or in other words, he will see to it that these Japanese do not, through their ignorance of American law, pay the money that the owners of the vessel are bound to pay.

Whensoever it shall be made to appear to this Court that its interference is necessary to redress a great wrong in a matter of foreign seamen—to prevent a failure of justice—it will not in the future, as it has not in the past, be backward in using its authority. But where, as in this case, justice between the parties is obtainable at the hands of the authorities whose flag the ship carries, and who are appointed in this country to administer the laws which such country has seen fit to enact, for the government of their mercantile marine, this Court will not interfere, and declines to do so in this case.

*A. S. Hartwell*, proctor for libellants.

*Captain Wicks*, in person.

Honolulu, November 9, 1874.